**KAZEROUNI LAW GROUP, APC**
Gor Antonyan, Esq. (354718)
gor@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
David J. McGlothlin (253265)
david@kazlg.com
301 E. Bethany Home Road, Suite C-195
Phoenix, Arizona 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*,
Sean Leonard

### UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SEAN LEONARD,** | Case No.: |
| **Plaintiff,** | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:** |
| v. | |
| **NAVY FEDERAL CREDIT UNION; EARLY WARNING SERVICES, LLC;** | 1) **FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, *ET SEQ.*;** |
| **Defendants.** | 2) **CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE § 1785.1, *ET SEQ.*;** |
| | 3) **ELECTRONIC FUNDS TRANSFER ACT, 15 U.S.C. §§ 1693, *ET SEQ.*** |
| | **JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. Plaintiff SEAN LEONARD ("Plaintiff") brings this action for actual damages, punitive damages, statutory damages, attorney fees and costs, and any other relief the court deems proper against Defendants NAVY FEDERAL CREDIT UNION ("Navy") and Early Warning Services, LLC ("Early Warning"), (collectively referred to as "Defendants") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*.; the California Consumer Credit Reporting Agencies Act ("CCCRAA"), Cal. Civ. Code §1785.1, *et seq*.; and Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq*. stemming from unauthorized electronic funds transfers and Defendants' inaccurate reporting of checking account fraud on Plaintiff's consumer reports.

2. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA") to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

3. The stated purpose of the Electronic Fund Transfers Act, 15 U.S.C. § 1693, et seq. ("EFTA"), is to "provide a basic framework establishing the rights, liability, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b).  EFTA's "primary objection…is the provision of individual

consumer rights." *Id*. Moreover, the language of EFTA indicates that the consumer protection measures contemplated by it are aimed at promoting disclosure, preventing fraud, and allocating liability. *Id*., at 1693d-1.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to the Plaintiff, or to the Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

6. All violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

7. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants named.

## JURISDICTION AND VENUE

8. This action arises out of violations of the FCRA and EFTA.

9. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. §§ 1681, *et seq*.; and 15 U.S.C. § 1693 *et seq*.

10. The violations alleged herein against Plaintiff, at all relevant times herein, occurred in the county of Los Angeles, State of California, where Plaintiff resides and within this District.

11. Because Defendants conduct substantial business within the State of California (including Los Angeles County, California), personal jurisdiction is established.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here, Plaintiff resides in this judicial district, and Defendants transact business here.

COMPLAINT FOR DAMAGES

**PARTIES**

13. Plaintiff is a natural person who, at all relevant times alleged herein, resides in the County of Los Angeles, State of California.

14. Plaintiff is also a "consumer" as that term is defined by 15 U.S.C. 1693a(6).

15. Plaintiff is also a "person" as that term is defined by Cal. Civ. Code § 1785.3(j).

16. Upon information and belief, Navy is a federal credit union with its headquarters in Vienna, Virginia and corporate offices in California (among other states), including in Los Angeles County.

17. Navy routinely engages in the practice of electronic fund transfers as defined by 15 U.S.C 1693a(7).

18. Navy is a "financial institution" as defined by 15 U.S.C. 1693a(9).

19. Navy is also a "person" as defined by Regulation E in 12 C.F.R. 1005.2(j).

20. In addition, this case involves Plaintiff's "consumer report" as that term is defined by 15 U.S.C. § 1681a(d)(1) in that inaccurate representations of Plaintiff's credit worthiness, credit standing, credit history, account balance and credit capacity were made via written, oral, or other communication of information to and by a consumer reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

21. Navy is also a furnisher of information as contemplated by FCRA sections 1681s-2(b).

22. Upon information and belief, Early Warning is a limited liability company located in the State of Arizona and is a "person" as defined by 15 U.S.C. § 1681a(b).

23. Early Warning is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

COMPLAINT FOR DAMAGES

**FACTUAL ALLEGATIONS**

24. At all times relevant, Plaintiff is an individual residing within the State of California.

25. Prior to June of 2024, Plaintiff maintained the following checking accounts with Navy: Account Ending in 4134, Account Ending in 3875, Account Ending in 9538, Account Ending in 9645 (Joint Account with Isaiah Burnett), and Account Ending in 8022 (Joint Account with Eva Leonard).

26. At all times, Plaintiff maintained his Navy Federal accounts in good standing, with positive balances across all Navy accounts.

27. However, on or about June 6, 2024, Plaintiff received a phone call from Navy's collections department advising that his accounts were overdrawn, and that Navy was seeking to collect on the resulting negative balances.

28. Plaintiff was shocked and confused by the call, as he had no reason to believe that any of his accounts were overdrawn or that he had incurred any significant recent charges.

29. Plaintiff immediately logged into his online banking portal and discovered that his checking accounts had been debited numerous times on June 5, 2024, through a series of unauthorized transactions made at multiple GameStop retail locations across Southern California.

30. Upon review, Plaintiff identified approximately 37 unauthorized debit transactions totaling $18,652.60, along with an additional late fees, which had been posted to his Navy Accounts.

31. These transactions were not authorized by Plaintiff, nor did Plaintiff receive any benefit from them. Plaintiff did not make any purchases at GameStop on or around June 5, 2024.

32. As a matter of fact, Plaintiff was nowhere near any GameStop location on June 5, 2024.

33. Plaintiff was alarmed and deeply distressed by the scope and nature of the

fraudulent charges, particularly given that many of the unauthorized transactions appeared to occur nearly simultaneously at different locations.

34. In addition, prior to the date of the unauthorized debits, Plaintiff had "frozen" all of his Navy Account using Navy's own digital card controls.

35. Nevertheless, for some reason, the unauthorized transactions were able to be processed.

36. Plaintiff immediately contacted Navy's fraud department and spoke with a representative. Plaintiff reported the unauthorized transactions orally and was told to follow up with written disputes.

37. Plaintiff promptly complied with Navy Federal's instructions and submitted five timely written disputes in June 2024, each corresponding to the affected accounts. He continued following up in July and August.

38. In his June 2024 disputes, Plaintiff clearly explained the circumstances, stated that he had no knowledge of the source of the unauthorized transactions, and requested that Navy conduct an investigation and refund the disputed amounts.

39. Between late June and early July 2024, Navy responded to Plaintiff's disputes by stating that GameStop had "submitted credits for the transactions [Plaintiff] identified as fraudulent," and informed Plaintiff that the fraud claim had been closed.

40. However, Navy misunderstood the substance of Plaintiff's disputes. Plaintiff had clearly challenged a different set of transactions—those that occurred after the credits were issued by GameStop.

41. The later transactions were not refunded, and Plaintiff maintained that they were unauthorized.

42. Plaintiff continued to reach out to Navy, asking it to reopen the investigation and repeatedly clarifying that the transactions in question were not authorized by him and that he received no benefit from them.

43. Throughout July and August 2024, Plaintiff submitted multiple detailed written

COMPLAINT FOR DAMAGES

dispute letters through Navy's secure messaging portal, explaining that the transactions at issue were unauthorized. Despite these efforts, Navy failed to provide a meaningful response or conduct a proper investigation.

44. In addition, Plaintiff had multiple conversations with Navy's customer service and fraud department representatives, some of whom explicitly acknowledged that the transactions appeared to be unauthorized.

45. On or about August 5, 2024, Plaintiff filed an identity theft report under penalty of perjury with the Federal Trade Commission, outlining the details of the unauthorized transactions.

46. On or about August 7, 2024, Plaintiff also filed a police report with the Los Angeles Police Department concerning the same unauthorized activity.

47. That same day, Plaintiff submitted another detailed statement to Navy recounting the events surrounding the unauthorized transactions and included copies of both the FTC Identity Theft Report and the LAPD Victim Receipt.

48. Nevertheless, Navy continued to respond with the same position—that GameStop had already issued credits for the disputed transactions—despite the fact that no such credits had been issued for the transactions Plaintiff was disputing.

49. Navy repeatedly denied Plaintiff's claims without conducting a reasonable or adequate investigation into the actual disputed transactions.

50. Had Navy reviewed the content of Plaintiff's dispute letters and the supporting documentation he provided, it would have recognized that the transactions in question were clearly unauthorized and constituted errors.

51. Despite Plaintiff's repeated efforts, Navy has not returned any of Plaintiff's funds. His accounts remain overdrawn by more than $15,000.00.

52. Navy did not issue any provisional credits to Plaintiff while it reviewed the Plaintiff's claims.

53. In addition, Plaintiff repeatedly requested copies of the documents or evidence

that Navy Federal relied on during its investigation. Plaintiff received no materials in return.

54. As a matter of fact, in one instance, Plaintiff received a response from Navy that documentation would not be supplied for "compliance" reasons.

55. Plaintiff has been subjected to the distressing experience of fraud. Plaintiff has taken proactive measures to substantiate his disputes, obtaining a police report from his local police department.

56. At no point during the investigation did Navy proactively seek out Plaintiff for any supporting documents or additional information.

57. Navy's investigation was unreasonable.

58. More specifically, Navy should have discovered from its own records, including Plaintiff's investigative materials, that the transfers at issue were unauthorized.

59. Navy did not have a reasonable basis for believing that Plaintiff's accounts were not in error.

60. Navy knowingly and willfully concluded that Plaintiff's accounts not in error when such conclusion could not reasonably have been drawn from the evidence available to Navy at the time of its investigation.

61. To date, Navy did not compensate Plaintiff for the damages Claimant incurred as a result of Navy's violations.

62. Since Plaintiff's efforts to be absolved of the unauthorized transfers were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's disputes.

63. In or around August 2024, Plaintiff visited a Wescom Credit Union branch in West Los Angeles, California, and applied to open a deposit account.

64. Wescom Credit Union denied Plaintiff's application and advised Plaintiff to contact Early Warning for more information regarding the basis of the denial.

65. On or about August 20, 2024, Plaintiff submitted a written request to Early Warning for a copy of his consumer report by transmitting the request via

facsimile to the number provided by Early Warning on its website: +1 (480) 656-6850.

66. Early Warning received Plaintiff's faxed request, as it was sent successfully and directed to the number designated by the company for such consumer requests.

67. Despite receiving the request, Early Warning failed to provide Plaintiff with a copy of his consumer report or any of the information contained in his consumer file.

68. In or around January 2025, having still not received his Early Warning consumer report, Plaintiff submitted a second request for his consumer report using the online request portal offered by Early Warning.

69. Upon review of his Early Warning consumer report, Plaintiff was shocked to find out that in his Early Warning consumer report, Navy Account Ending in 3875 indicated a status of *checking account fraud*.

70. It was at that point that Plaintiff discovered Navy had reported him to Early Warning for alleged checking account fraud.

71. Plaintiff did not participate in any fraudulent activity and had no knowledge or reason to believe that any of his actions could be considered "fraudulent."

72. In reality, Plaintiff was the victim of unauthorized transactions, which he promptly reported to Navy upon discovery.

73. Rather than conducting a reasonable investigation into Plaintiff's disputes, Navy instead reported Plaintiff to Early Warning for alleged checking account fraud.

74. This reporting was unfounded, as the facts alleged herein show the opposite to be true—Plaintiff did not commit any fraud.

75. Instead, Plaintiff was the one who identified and disputed fraudulent activity on his own accounts, which is further supported by the fact that he filed an identity theft report with the Federal Trade Commission and a police report with the Los Angeles Police Department.

76. On or about April 4, 2025, frustrated and desperate to correct his consumer

report, Plaintiff sent Early Warning a written dispute containing: (1) a detailed narrative concerning the circumstances of the inaccurate reporting; (2) a copy of the Los Angeles Police Department Victim Receipt; (3) a copy of Plaintiff's Social Security Card; and (4) a copy of Plaintiff's driver's license.

77. Plaintiff's dispute to Early Warning clearly identified the account at issue and provided a detailed explanation of the events, including the unauthorized transactions, his efforts to dispute them with Navy, the filing of a police report, and Navy's failure to take appropriate action.

78. In addition, Plaintiff's dispute to Early Warning expressly stated that he had not engaged in any fraudulent activity and, in fact, was the victim of unauthorized transactions that he had reported to Navy Federal. This was further supported by the police report he included with his dispute submission.

79. In a letter dated April 23, 2025, Navy responded to Plaintiff's April 4, 2025 dispute to Early Warning stating, "We have investigated your claim and found that the information we reported to the consumer reporting agency was accurate and does not warrant an adjustment."

80. In a letter dated April 26, 2025, Early Warning responded to Plaintiff's April 4, 2025 dispute indicating its investigation is now complete.

81. The results of Early Warning purported investigation were that Early Warning found that "THE INFORMATION CONTAINED IN [PLAINTIFF'S] FILE IS ACCURATE AND COMPLETE AS OF THE DATE IT WAS FURNISHED TO OUR DATABASE."

82. Upon information and belief, as of the date of this Complaint, Early Warning is still reporting the Navy Account Ending in 3875 to Plaintiff's consumer report as *checking account fraud*.

83. Upon information and belief, Early Warning did nothing more than forward Plaintiff's dispute to Navy and relied solely on Navy's representations in reaching its reinvestigation outcome.

84. The detailed narrative and supporting documents provided by Plaintiff should have prompted Early Warning to question the accuracy of its reporting.

85. Despite clear evidence that Plaintiff was the victim of unauthorized activity, Early Warning ignored the substance of his dispute.

86. In addition, Early Warning provided no meaningful explanation of its reinvestigation process, nor did it explain why it continued to report Plaintiff for alleged checking account fraud despite the uncontroverted documentation showing he was a victim of unauthorized electronic fund transfers.

87. Early Warning's reinvestigation process was cursory, automated, and lacked any individualized consideration of Plaintiff's evidence or the surrounding circumstances.

88. Early Warning did not contact Plaintiff for any clarification, did not request additional documentation, and made no effort to verify the legitimacy or accuracy of the evidence Plaintiff had already submitted.

89. As a result of Early Warning's failure to conduct a reasonable reinvestigation, inaccurate and damaging information continued to be reported about Plaintiff, including a false claim that he had engaged in checking account fraud in connection with his Navy Federal Account Ending in 3875.

90. As the data furnisher for Plaintiff's Account, Navy has control over the status of Plaintiff's Account, including suppression and permanently deleting or modifying incorrect reporting at issue, yet, upon information and belief, it has failed to do so as the Navy Federal Account Ending in 3875 is still reporting as fraud on Plaintiff's Early Warning consumer report as "checking account fraud."

91. Similarly, Early Warning has a duty to reasonably investigate Plaintiff's written disputes, which was clearly not done here. Upon information and belief, as of the date of the filing of this Complaint, the Navy Federal Account Ending in 3875 is being reported as checking account fraud by Early Warning and was not promptly deleted or modified in response to Plaintiff's April 2025 dispute.

COMPLAINT FOR DAMAGES

92. The harm caused by Defendants is continuing through the present day. Indeed, Plaintiff still has feelings of embarrassment, shame and hopeless that he might never get this situation resolved–especially since the Navy Federal Account Ending in 3875 is still being reported to Plaintiff's Early Warning consumer report as *checking account fraud*.

93. On information and belief, Navy has not taken affirmative steps to suppress the reporting of the Account as checking account fraud to Plaintiff's consumer report.

94. Through this conduct, Navy has violated Cal. Civ. Code 1785.25(a) by furnishing information to consumer reporting agency that Navy knew or should have known was inaccurate.

95. Upon information and belief, Navy submitted inaccurate information regarding Plaintiff to Early Warning every thirty days during the period of, at least, April 2025 through the present.

96. Accordingly, Navy willfully and negligently failed to comply with its duties to reasonably investigate Plaintiff's disputes and to update the reporting of the Navy Account accurately by permanently removing, blocking and/or suppressing the inaccurate reporting from Plaintiff's consumer reports and also updating Plaintiff's associated information.

97. Navy's inaccurate and negative reporting damaged Plaintiff's creditworthiness and has affected Plaintiff negatively due to the misleading nature of Navy's inaccurate reporting regarding the status of the Navy Federal Account Ending in 3875.

98. As a result of the actions alleged herein, Early Warning also failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.S.C. §1681i.

99. Plaintiff's continued efforts to correct Defendants' erroneous and negative reporting by communicating Plaintiff's disputes with Early Warning were fruitless.

100. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's consumer reports in light of Defendants' knowledge of the actual error was willful.

101. Defendants' continued inaccurate and negative reporting of the inaccurate information to Plaintiff's consumer report in light of Defendants' knowledge of the actual error was reckless.

102. Defendants' failure to correct the inaccuracies on Plaintiff's consumer reports was intentional and in reckless disregard of Defendants' duty to refrain from reporting inaccurate information.

103. Accordingly, Defendants willfully and negligently failed to comply with Defendants' respective duties to reasonably investigate Plaintiff's dispute.

104. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness.

105. Defendants' conduct alleged herein has also caused Plaintiff emotional distress that continues until the present day as the Navy Federal Account Ending in 3875 continues to be reported inaccurately to Plaintiff's consumer reports.

106. Plaintiff has spent countless hours disputing this inaccurate information without success.

107. Plaintiff's anxiety, frustration, stress, lack of sleep, nervousness, anger, and embarrassment continues to this day because the inaccurate reporting of the Navy Federal Account Ending in 3875 mischaracterizes Plaintiff as someone that engages in fraud and significantly harms Plaintiff's ability to bank at other institutions because Plaintiff is otherwise in good standing despite the reporting for fraud that Plaintiff never committed.

108. As a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered actual damages, including, but not limited to, reviewing consumer reports, attorneys' fees, loss of credit, loss of ability to purchase and benefit from credit, increased costs for credit, mental and emotional pain and anguish, and humiliation and embarrassment of the possibility of credit denials.

109. Plaintiff has further spent countless hours and suffered pecuniary loss in attempting to correct Defendants' inaccurate and derogatory information, without success.

110. Most critically, Plaintiff now cannot open another checking account with financial institutions that review Early Warning consumer reports due to inaccurate reporting of checking account fraud on his Early Warning consumer report.

111. Plaintiff also has refrained from applying to financial institutions that review Early Warning consumer reports for a checking account for fear of future denials.

112. Based upon the discussion above, Plaintiff contends that punitive damages are available to Plaintiff.

113. By intentionally reporting inaccurate information, Defendants acted in conscious disregard for Plaintiff's rights.

114. Since Plaintiff's efforts to correct his consumer report were unsuccessful, Plaintiff was required to bring this action to finally resolve Plaintiff's remaining disputes.

115. As a result of Defendants' actions, omissions, and willful action and inaction, Plaintiff has suffered damage by inability to bank, loss of ability to purchase and benefit from credit/debit, increased costs for credit/debit, invasion of privacy, personal embarrassment, loss of personal reputation, loss of productive time, nausea, and feelings of fear, anxiety, hopelessness, anger, persecution, emotional distress, frustration, upset, humiliation, and embarrassment, amongst other

negative emotions.

116. Plaintiff's injuries are concrete. Defendants' conduct of reporting inaccurate and derogatory information is analogous to the common law tort of defamation.

117. Furthermore, the Legislature enacted the FCRA to protect consumers from precisely the conduct described in this Complaint. The banking system is dependent upon fair and accurate credit reporting; and inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

118. Consequently, the FCRA was enacted to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy; and to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

119. The alleged transgressions by Defendants would, if left unchecked in a competitive marketplace, naturally propagate had the Legislature not created laws to give vulnerable consumers a voice and a mechanism for private enforcement.

### CAUSES OF ACTION CLAIMED BY PLAINTIFF

### COUNT I
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681E(B)
### [AS TO EARLY WARNING]

120. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

121. Early Warning violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the Plaintiff's consumer report and file it published and maintains concerning

the Plaintiff.

122. As a result of the conduct, actions and inactions of Early Warning, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: inability to bank, loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

123. The conduct, actions and inactions by Early Warning were willful, rendering Early Warning liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Early Warning was at a minimum negligent entitling Plaintiff to recover under 15 U.S.C. §1681o.

124. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Early Warning in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT II
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681I(A)(1)
### [AS TO EARLY WARNING]

125. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

126. Early Warning violated 15 U.S.C. §1681i(a)(l) by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from the Plaintiff's consumer report.

127. As a result of the conduct, actions and inactions of Early Warning, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: inability to bank, loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

128. The conduct, actions and inactions by Early Warning were willful, rendering

Early Warning liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Early Warning was negligent entitling Plaintiff to recover under 15 U.S.C. §1681o.

129. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Early Warning in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT III
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681I(A)(4)
## [AS TO EARLY WARNING]

130. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

131. Early Warning violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by Plaintiff.

132. As a result of the conduct, actions and inactions of Early Warning, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: inability to bank, loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

133. The conduct, actions and inactions by Early Warning were willful, rendering Early Warning liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Early Warning was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

134. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Early Warning in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

//

//

//

COMPLAINT FOR DAMAGES

## COUNT IV
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681(A)(5)(A)
### [AS TO EARLY WARNING]

135. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

136. Early Warning violated 15 U.S.C. §1681i(a)(5)(A) on multiple occasions by failing to promptly delete the disputed inaccurate item of information from Plaintiff's consumer report or modify the item of information upon an accurate reinvestigation.

137. As a result of the conduct, actions and inactions of Early Warning, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: inability to bank, loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

138. The conduct, actions and inactions by Early Warning were willful, rendering Early Warning liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Early Warning was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

139. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorney's fees from Early Warning in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT V
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681J(A)(2)
### [AS TO EARLY WARNING]

140. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

141. Early Warning violated 15 U.S.C. § 1681j(a)(2) by failing to provide Plaintiff

1     with a free copy of his consumer report within 15 days after Plaintiff's request

2     was delivered to Early Warning.

3   142. As a result of the conduct, actions and inactions of Early Warning, Plaintiff

4     suffered actual damages including without limitation, by example only and as

5     described herein on Plaintiff's behalf by counsel: inability to bank, loss of credit,

6     damage to reputation, embarrassment, humiliation, and other mental and

7     emotional distress.

8   143. The conduct, actions and inactions by Early Warning were willful, rendering

9     Early Warning liable for punitive damages in an amount to be determined by the

10     Court pursuant to 15 U.S.C. §1681n. In the alternative, Early Warning was

11     negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

12   144. Plaintiff is entitled to recover actual damages, statutory damages, costs, and

13     attorney's fees from Early Warning in an amount to be determined by the Court

14     pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT VI
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681S-2(B)(1)(A)
### [AS TO NAVY]

18   145. Plaintiff incorporates by reference all of the above paragraphs of this Complaint

19     as though fully stated herein.

20   146. Navy was required to conduct a reasonable investigation into the disputed

21     account on Plaintiff's consumer report pursuant to 15 U.SC. § 1681s-2(b)(1)(A).

22   147. Navy violated 15 U.SC. § 1681s-2(b)(1)(A) on multiple occasions by failing to

23     conduct a reasonable investigation to determine whether the disputed

24     information is inaccurate and record the current status of the disputed

25     information or request the item to be permanently deleted Plaintiff's consumer

26     report.

27

28

COMPLAINT FOR DAMAGES

KAZEROUNI
LAW GROUP, APC

148. Accordingly, Navy failed to conduct a reasonable investigation with respect to the disputed information as required by 15 U.SC. § 1681s- 2(b)(1)(A) by failing to remove all of the disputed and incorrect information.

149. As a result of the conduct, actions and inactions of Navy, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: inability to bank, loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

150. The conduct, actions and inactions by Navy were willful, rendering Navy liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Navy was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

151. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Navy in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT VII
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.SC. § 1681S-2(B)(1)(B)
### [AS TO NAVY]

152. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

153. Navy violated 15 U.S.C. § 1681s-2(b)(1)(B) on multiple occasions by failing to review all relevant information provided by Plaintiff in the dispute to Early Warning.

154. As a result of the conduct, actions and inactions of Navy, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: inability to bank, loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

155. The conduct, actions and inactions by Navy were willful, rendering Navy liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

156. In the alternative, Navy was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

157. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Navy in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

COUNT VIII
VIOLATION OF THE FAIR CREDIT REPORTING ACT
15 U.SC. § 1681s-2(B)(1)(C)-(E)
[AS TO NAVY]

158. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

159. Due to Navy's failure to reasonably investigate, Navy further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-2(b)(1)(E), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C).

160. By inaccurately reporting account information after notice and confirmation of its errors, Navy failed to take appropriate measures as required by 15 U.S.C. § 1681s-2(b)(1)(D); and, (E).

161. The conduct, actions and inactions by Navy were willful, rendering Navy liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

162. In the alternative, Navy was negligent entitling the Plaintiff to recover under 15 U.S.C. §1681o.

163. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Navy in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT IX**
**VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT CAL. CIV. CODE § 1785.1, *ET SEQ.***
**[AS TO NAVY]**

164. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

165. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

166. In the regular course of its business operations, Navy routinely furnishes information to credit reporting agencies pertaining to transactions between Navy and Navy's consumers, thereby providing information to the credit reporting agencies regarding a consumer's credit worthiness, credit standing and credit capacity.

167. Because Navy is a partnership, corporation, association, or other entity, and is therefore a "person" as that term is defined by Cal. Civ. Code § 1785.3(j), Navy is and always was obligated to not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should have known that the information is incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

168. Navy should have determined that its reporting was inaccurate through review of Navy's own account notes and records. This is especially true since Plaintiff provided multiple oral and written disputes attesting to the unauthorized transactions on the accounts at issue.

169. However, despite this knowledge of the fact that Plaintiff did not commit fraud, Navy continued to report the inaccurate information to Plaintiff's Early Warning consumer report.

170. As a result of the willful, negligent, and/or reckless actions and inactions of Navy, Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: inability to bank,

COMPLAINT FOR DAMAGES

loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

**COUNT X**
**VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**
**15 U.S.C. § 1693 *et seq.***
**[AS TO NAVY]**

171. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

172. Plaintiff did not give actual authority to anyone to initiate the electronic transfers at issue from his accounts, and therefore these transfers constituted unauthorized electronic fund transfers under §1693a(12) and 12 C.F.R. 1005.2(m).

173. Plaintiff notified Navy of the error within 60 days of gaining access to his account statements, and therefore Navy was obligated to comply with the error investigation procedures of the EFTA. 12 C.F.R. § 1005.11(b)(1)(i).

174. Navy is liable to Plaintiff for treble damages under 15 U.S.C. § 1693f(e) because it did not issue Plaintiff a sufficient provisional credit within 10 days, and it failed to conduct a good faith investigation and did not have a reasonable basis for believing Plaintiff's account was not in error. 15 U.S.C. § 1693f(e)(1).

175. Navy knowingly and/or willfully concluded that Plaintiff had performed the disputed transfers when such a conclusion could not reasonably have been drawn from the evidence available to it at the time of its investigation, in violation of §1693f(e)(2).

176. Navy failed to provide Plaintiff with an adequate explanation as to the results of its investigation in violation of 15 U.S.C. § 1693f.

177. Navy further failed to provide Plaintiff with the documents it relied on during its investigation, despite Plaintiff's requests in violation of 15 U.S.C. § 1693f.

178. As a result of each and every violation of EFTA, Plaintiff is entitled to any actual damages pursuant to 15 U.S.C. § 1693m(a)(1); statutory damages

COMPLAINT FOR DAMAGES

pursuant to 15 U.S.C. § 1693m(a)(2)(A); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for:

### FIRST CAUSE OF ACTION
### FAIR CREDIT REPORTING ACT,
### 15 U.S.C. §§ 1681, *ET SEQ.*
### [AS TO NAVY AND EARLY WARNING]

- An award of actual damages, in an amount to be determined at trial or damages of a maximum of $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), against each Defendant for each incident of willful noncompliance of the FCRA;

- An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against Defendants for each incident of negligent noncompliance of the FCRA;

- Statutory damages;

- Punitive damages according to proof as to the FCRA, including, an award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n and/or § 1681o, against each Defendant for each incident of willful noncompliance to the FCRA;

- Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n, and 1681o;

- An order directing that Defendants immediately delete all of the inaccurate information from Plaintiff's consumer reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information;

- An order directing that Defendants send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected consumer report information; and,

- Any and all other relief the Court deems just and proper.

**SECOND CAUSE OF ACTION**
**CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT,**
**CAL. CIV. CODE § 1785.1, *ET SEQ.***
**[AS TO NAVY]**

• Actual damages, including court costs, loss of wages, and pain and suffering pursuant to Cal. Civ. Code § 1785.31(a);

• Costs and reasonable attorney's fees pursuant to Cal. Civ. Code § 1785.31(a)(1); and, Cal. Civ. Code § 1785.31(d);

• Punitive damages according to proof as to the CCCRAA, including an award of punitive damages of $100-$5,000 per willful violation of Cal. Civ. Code § 1785.25(a), pursuant to Cal. Civ. Code § 1785.31(a)(2)(B);

• Equitable and injunctive relief pursuant to Cal. Civ. Code § 1785.31(b);

• An order directing that Defendant immediately delete all of the inaccurate information from Plaintiff's credit reports and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information;

• An order directing that Defendant send to all persons and entities to whom they have reported Plaintiff's inaccurate information within the last three years Plaintiff's updated and corrected credit report information; and

• Any and all other relief the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**ELECTRONIC FUNDS TRANSFER ACT**
**15 U.S.C. § 1693 *et seq.***
**[AS TO NAVY]**

• An award of actual damages pursuant to 15 U.S.C. § 1693m(a)(1);

• An award of treble damages pursuant to 15 U.S.C. § 1693f(e);

• An award of statutory damages of no less than $100 nor greater than $1,000 per violation pursuant to 15 U.S.C. § 1693m(a)(2)(A);

• An award of costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1693m(a)(3);

1    • Any and all other relief the Court deems just and proper.

2                              **TRIAL BY JURY IS DEMANDED**

3            Pursuant to the Seventh Amendment to the Constitution of the United States of

4    America, Plaintiff is entitled to, and demands, a trial by jury.

5

6    Dated: May 28, 2025                    Respectfully submitted,

7

8                                          **KAZEROUNI LAW GROUP, APC**

9                                          By: _/s/ Gor Antonyan,, Esq._
                                            Gor Antonyan, Esq.
10                                          David J. McGlothlin, Esq.
                                            *Attorneys for Plaintiff*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES